UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION



FILED

JAN 3 0 2008

CLERK U.S. BANKRUPTCY,
ORLANDO DIVISION

In re:

JANEMARIE BURZEE,

    Debtor.
_____/

Case No. 6:04-bk-06902-ABB
Chapter 7

PARK AVENUE INSURANCE
AGENCY, INC.,

    Plaintiff,

vs.

JANEMARIE BURZEE,

    Defendant.
_____/

Adv. Pro. No. 6:05-ap-00323-ABB

## MEMORANDUM OPINION

This matter came before the Court on the Adversary Proceeding Complaint (Doc. No. 1) ("Complaint") filed by Park Avenue Insurance Agency, Inc., the Plaintiff herein, against Janemarie Burzee, the Defendant and Debtor herein ("Debtor"). The Plaintiff seeks a denial of the Debtor's discharge pursuant to 11 U.S.C. Sections 727(a)(2) and 727(a)(4).[1] A final evidentiary hearing on the Complaint was held on October 31, 2007 at which the Debtor, counsel for the Debtor, a representative of the Plaintiff, and Plaintiff's counsel appeared. The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises.

---

[1] Judgment was entered in favor of the Debtor and against the Plaintiff on the Plaintiff's 11 U.S.C. Section 523(a)(6) count on June 19, 2007 (Doc. Nos. 49, 50). The Plaintiff subsequently withdrew its Section 523(a)(2) count.

# FINDINGS OF FACT

## *Background*

The Debtor filed an individual Chapter 13 case on June 15, 2004 ("Petition Date"), which she voluntarily converted to Chapter 7 on September 13, 2005. Scott R. Fransen is the Chapter 7 Trustee ("Trustee"). The Debtor has cooperated with the Trustee throughout her Chapter 7 proceedings. The Trustee has completed the administration of the Debtor's estate and submitted his Final Report. The Plaintiff has been actively involved in the Debtor's bankruptcy case since its inception. The sole remaining matters are the Plaintiff's objections to the Debtor's exemptions and this adversary proceeding.

The Plaintiff is an insurance agency located in Orlando, Florida specializing in employer benefits and was the Debtor's employer from November 1998 through October 2002. Her duties included servicing existing client accounts and cultivating new business. The Debtor, after the Plaintiff terminated her employment, joined Hugh Cotton Insurance, Inc., a competitor of the Plaintiff. She is a high school graduate and completed some community college coursework.

The Plaintiff holds a general unsecured claim of $199,760.47 (Claim No. 4-2) emanating from a series of judgments entered by the Circuit Court of the Ninth Judicial Circuit, in and for Orange County, Florida against the Debtor for violating the non-compete covenant of her employment agreement after she left the Plaintiff's employ.[2]

The Debtor has a daughter, age fourteen, whose father is Richard Zika ("Zika"). The Debtor is the daughter's custodian and caregiver. She and her daughter have lived with Zika from time to time and he provides support sporadically for the daughter. Zika

---

[2] Plaintiff's Exh. Nos. 1-7.

and the Debtor have known each other since 1982 and have never married. The Debtor and her daughter moved into a condominium in 2002 located at 1100 East Caroline Street, Unit 214C, Tavares, Florida 32778, which is the Debtor's exempt homestead and is owned jointly with Zika.

Zika and the Debtor for several years dabbled in real estate, purchasing residential properties and renting them to tenants. The Debtor developed a close relationship with a colleague at the Plaintiff's office and shared information with the colleague relating to her and Zika's financial matters. The colleague was the Plaintiff's primary witness.

### *Nancy Street Property*

The Debtor and Zika obtained title to a single family residence located at 2901 East Nancy Street, Orlando, Florida ("Nancy Street Property") as "joint tenants with rights of survivorship and not as tenants in common" pursuant to a Warranty Deed executed by Zika as the grantor on March 30, 2001.[3] The property had been Zika's childhood home. The Debtor understood she was placed on the title for the benefit of their daughter. Zika explained he titled the property jointly in their names for the benefit of their daughter. Zika and the Debtor rented the Nancy Street Property to tenants while it was jointly owned. The Debtor has never lived at the property.

Zika and the Debtor executed a Mortgage on February 19, 2004 to secure a loan of $87,000.00 with the Nancy Street Property as collateral.[4]

---

[3] Plaintiff's Exh. No. 17. The legal description of the property is: "Lot 10, Block A, ARDMORE PARK, according to the Plat thereof, as recorded in Plat Book V, page 53, of the Public Records of Orange County, Florida."
[4] Plaintiff's Exh. No. 8.

The Debtor executed a Quit-Claim Deed on March 18, 2004 quitclaiming her interest in the Nancy Street Property to Zika.[5] Zika paid no consideration for the transfer. The Debtor explained she did not expect payment for the transfer because "she didn't feel it was hers to begin with."

The transfer was made within one year of the Petition Date and one day after the Final Judgment on Plaintiff's Motion for Summary Judgment and Defendant's Motion for Summary Judgment was entered against the Debtor in the State Court litigation.[6] The Debtor stated she "was not aware of any liability against me" when she executed the Quit-Claim Deed. She did not recall when or how the judgment was entered against her by the State Court. She testified she took no action in anticipation of the entry of a State Court judgment.

### *Rogel Transactions*

The Debtor's grandmother Marie Rogel ("Rogel") quitclaimed her interest in two properties to the Debtor by Quit-Claim Deeds executed on January 9, 2004. The properties are located at 1150 Markham Woods Road, Longwood, Florida 32779 (Rogel's home) and 117 Wilmer Avenue, Orlando, Florida.[7] Zika prepared the deeds. The Debtor paid no consideration for the transfers. It is unknown what events triggered the January 9, 2004 transfers.

---

[5] Plaintiff's Exh. No. 9.

[6] Plaintiff's Exh. No. 2. The State Court reserved jurisdiction for consideration of an award of attorneys' fees and ruling on an award of monetary damages to Plaintiff. The Final Judgment of Civil Contempt and Preliminary Order on Plaintiff's Motion for Entry of Final Judgment on Damages was entered on May 24, 2005 (Plaintiff's Exh. No. 3), the Final Judgment Taxing Attorney's Fees and Costs was entered on June 17, 2005 (Plaintiff's Exh. No. 4), and the Final Judgment on Plaintiff's Motion for Entry of Final Judgment on Damages was entered on September 6, 2005 (Plaintiff's Exh. No. 5). The September 6, 2005 Final Judgment was reversed in part, affirmed in part, and remanded (Plaintiff's Exh. No. 7).

[7] Plaintiff's Exh. No. 26; Debtor's Exh. No. 3.

Rogel instituted a suit against the Debtor on March 8, 2004 in the Seminole County, Florida State Court seeking to set aside the transfers and to quiet title.[8] The Debtor quitclaimed the properties back to Rogel on April 21, 2004.[9] Rogel paid no consideration for the re-transfer of the properties. The Debtor explained she transferred the properties due to Rogel's pending State Court suit.

The April 21, 2004 transfers returned the Debtor and her grandmother to their pre-January 9, 2004 positions with the grandmother holding title to both properties. No consideration was paid or passed to any party in the transfers.

Rogel executed a Durable Power of Attorney on November 29, 2004 appointing her son, James Toller, as her agent and attorney in fact.[10]

### *Plaintiff's Complaint*

The Plaintiff contends the Debtor should be denied a discharge because she: (i) within one year of the Petition Date transferred, removed, and concealed property with the intent to hinder, delay or defraud her creditors; and (ii) knowingly and fraudulently made false oaths or accounts by omitting property from her schedules and statement of financial affairs. The Plaintiff alleges in its Complaint the Debtor:

(i) Removed her name from the deed of the Nancy Street Property on March 18, 2004, one day after a State Court Judgment was entered against her and such action "implies an intent to delay, hinder or defraud" the Plaintiff.

(ii) Failed to disclose as assets and income:

  a. a mobile home valued at $10,000.00;
  b. rental income of $450.000 per month;
  c. a USAA brokerage account of $45,000.00;

---

[8] Plaintiff's Exh. No 3.
[9] Plaintiff's Exh. Nos. 10, 11.
[10] Debtor's Exh. No. 4.

        d. a collection of antique jewelry valued at $50,000.00 and listed on her homeowner's insurance policy;
        e. tax refunds of $4,600.00 per year;
        f. a Power of Attorney for Rogel relating to real property valued at $450,000.00.

(iii) Failed to disclose payments to creditors made within ninety days of the Petition Date "which payments operated as transfers of liquid assets" including:

        a. Satisfaction of a joint Navy Credit Union mortgage with Richard Zika on April 29, 2004 relating to real property located at 4907 sycamore Street; and

        b. Satisfaction of a joint Navy Credit Union mortgage with Richard Zika on May 6, 2004 relating to the Nancy Street Property.

(iv) Failed to disclose transfers to insiders:

        a. Rogel's transfers on January 9, 2004 of 1150 Markham Woods Road and 117 Wilmer Avenue to the Debtor by quitclaim deed to secure a $130,000.00 line of credit for the Nancy Street Property;

        b. The Debtor's quitclaim transfers of the Markham and Wilmer Properties back to Rogel on April 21, 2004; and

        c. The Debtor's quitclaim transfer of the Nancy Street Property to Zika on March 18, 2004.

(v) The Debtor "engaged in various transactions and maneuvers prior to filing her initial petition that resulted in her non-exempt property, previously owned jointly with Richard Zika, appearing only in Zika's name . . . ."

The Plaintiff is the only party who has challenged the Debtor's discharge. Its presentation at trial went beyond the specific allegations of the Complaint.[11]

---

[11] The Plaintiff did not seek to amend its Complaint pursuant to Federal Rule of Bankruptcy Procedure 7015 by written or *ore tenus* motion.

### *Debtor's Schedules and Statements*

The Debtor filed her original Schedules on June 30, 2004.[12] She listed her homestead as the sole asset on Schedule A and listed as assets in Schedule B:

(i) a Central Florida Educators Credit Union savings and checking account #34302 owned jointly with Zika valued at $10.00;

(ii) furnishings valued at $965.00;

(iii) books, pictures, clothing valued at $175.00;

(iv) "watch, bracelets, earrings and necklace" valued at $500.00; and

(v) a 1996 Mercedes C280 valued at $6,000.00.

Each of these assets, except the car, was claimed as exempt in Schedule C.[13]

The Debtor's Statement of Financial Affairs contains:

(i) "None" as payments to creditors in Questions 3a and b.

(ii) The disclosure in Question 4 of the Plaintiff's State Court litigation and State Court litigation captioned *Marie R. Rogel v. Janemarie Burzee* stating "Deeds conveyed back to Plaintiff but no judgment."

(iii) "None" for Questions 7 through 9 relating to gifts, losses, and payments to counsel.

(iv) A disclosure in Question 10 of the March 18, 2004 Nancy Street Property transfer to Zika for "No value received."

(v) "None" in answer to the remaining questions (Questions 11 through 25).

The Debtor's original counsel filed a Rule 2016(b) compensation statement disclosing he agreed to accept and received $1,500.00 for legal services from the Debtor, who was the source of the funds.

---

[12] Main Case Doc. No. 1.
[13] The Debtor turned the car over to the Trustee and it was sold at auction.

The Debtor's original counsel withdrew and new counsel entered his appearance on September 7, 2007. The Debtor, with assistance of new counsel, filed Amended Schedules B and C and an Amended Statement of Financial Affairs on October 18, 2007.

Schedule B was amended to include: Navy Federal Credit Union Account #2925197 with a value of $25.15; USAA Federal Credit Union savings account #085-1790-8 with a value of $54.64; USAA Federal Credit Union savings account #085-1789-4 with a value of $79.33; and a USAA Investment Account/401K with a value of $6,857.73. The Central Florida Educators Credit Union Account #34302 listing was amended to increase its value from $10.00 to $2,560.08, consisting of a savings account of $270.16 and a checking account of $2,289.92. New exemptions were claimed in Schedule C.

Question 10 of the Debtor's Statement of Financial Affairs was amended to further disclose details regarding the March 18, 2004 Nancy Street Property transfer to Zika and the April 21, 2004 Rogel property transfers.

***Disputed Asset Disclosures***

The Plaintiff contends the Debtor knowingly and fraudulently made false oaths or accounts in her Schedules and concealed assets with the intent to hinder, delay, or defraud the Plaintiff. It alleged the Debtor had an interest in a mobile home titled in the name of the Debtor's nanny from which the Debtor collected rental income and she failed to disclose such interest. No evidence was presented establishing the Debtor ever had an interest in a mobile home, had a nanny, or received income from the rental of a mobile home.

The Plaintiff alleged the Debtor had a "Power of Attorney" for Rogel "relating to real property valued at $450,000.00," which she failed to disclose. The Debtor did not hold a power of attorney for Rogel. The only power of attorney presented was the Durable Power of Attorney held by James Toller.

The Plaintiff alleged the Debtor failed to disclose "rental income, approximately $450.00 per month." The Debtor's involvement with property rentals ceased in 2000. She had no rental income on the Petition Date to disclose. The Plaintiff alleged the Debtor failed to disclose "yearly tax refunds, approximately $4,600.00 per year." No evidence was presented establishing such refunds existed. The Debtor had no refunds to disclose.

The Plaintiff's allegations regarding the mobile home, power of attorney, rental income, and tax refund disclosures are unsubstantiated. The Debtor committed no disclosure omissions regarding these matters.

The Plaintiff alleged the Debtor failed to disclose a "large collection of antique jewelry, approximate value $50,000, listed on Burzee's homeowner's policy." The Debtor and Zika jointly held a homeowner's insurance policy with USAA Casualty Insurance Company for the period April 9, 2004 to April 9, 2005, which contains a Special Coverage provision for "Jewelry, Furs, Silver" with a term premium of $16.00.[14] The limit of liability for the Special Coverage is $2,000.00. The policy coverage limit for all personal property is $30,500.00.

The Debtor testified on the Petition Date she had a watch, bracelets, earrings and necklace valued at $500.00 as set forth in Schedule B. She owned no furs or silver. She believed the Schedule B listing was accurate. The Debtor gave the jewelry to Zika

---

[14] Plaintiff's Exh. No. 13.

postpetition in exchange for $1,000.00, which she used to pay her original bankruptcy counsel. No evidence was presented establishing the Debtor failed to disclose any jewelry or undervalued the items listed. The insurance policy reflects the jewelry had a maximum value of $2,000.00. The Plaintiff's allegations regarding the jewelry disclosures are unsubstantiated. The Debtor committed no disclosure omissions or inaccuracies regarding her jewelry.

The Plaintiff alleged the Debtor failed to disclose an "USAA brokerage account, approximately $45,000.00." The Debtor's paychecks reflect a deduction of $112.50 per pay period for a "401k."[15] The Debtor did not list in her original Schedule B her USAA Rollover Account, which had a balance of $6,857.73 on the Petition Date.[16] She testified she provided the account information to her original counsel, but the information did not appear on Schedule B. She did not question the nonappearance of the USAA Rollover Account on her schedules because she understood the account was exempt. She provided the account information to the Trustee at her Section 341 meeting of creditors. She explained her checking account frequently had a balance as low as $10.00 and believed that balance was correct on the Petition Date. The Debtor explained she employed replacement counsel after original counsel failed to amend her schedules.

The Debtor's testimony was credible and is supported by the events and chronology of her main case. Her new counsel submitted detailed amended schedules and statements *immediately* after being engaged. The Trustee has had no issues with the Debtor as evidenced by the absence of any motions to compel, objections, or adversary proceedings instituted by him against the Debtor.

---

[15] Plaintiff's Exh. No. 24.
[16] Plaintiff's Exh. No. 23.

The omission of the USAA Rollover Account from her original Schedule B was inadvertent and unintentional.[17] The Debtor made no knowing and fraudulent false oaths or accounts in her schedules and statements regarding any assets. The Plaintiff failed to establish the Debtor concealed any assets and acted with the intent to hinder, delay, or defraud the Plaintiff.

### *Disputed Transaction Disclosures*

The Plaintiff alleged the Debtor knowingly and fraudulently failed to disclose the January 9, 2004 and April 21, 2004 Rogel transfers and transferred the properties with the intent to hinder, delay, or defraud the Plaintiff. The Debtor did not disclose in her original Statement of Financial Affairs the January 9, 2004 Rogel transfers to her because only transfers *made by the Debtor* were required to be disclosed. The Debtor disclosed in Question 4 the April 21, 2004 transfers quitclaiming the properties back to Rogel. The Debtor could have disclosed the April 21, 2004 transfers with more precision at Question 10 (rather than at Question 4), but she did make the disclosure. She more fully described the transfers in her amended statements.

The Debtor made no knowing and fraudulent false oaths or accounts regarding the Rogel transfers. The Plaintiff failed to establish the Debtor knowingly and fraudulently failed to disclose the Rogel transfers. The Plaintiff failed to establish the Debtor concealed any assets and acted with the intent to hinder, delay, or defraud the Plaintiff.

---

[17] The Plaintiff made no allegations in its Complaint the Debtor made any false oaths or accounts regarding any accounts other than the USAA Rollover Account. The Plaintiff went beyond the allegations of its Complaint at trial asserting the Debtor made false oaths or accounts with respect to other accounts. The Schedule B amendments addressing the Navy Federal Credit Union, USAA Federal Credit Union, and the Central Florida Educators Credit Union accounts were made to remedy unintentional oversights. The Debtor made no knowing and fraudulent false oaths or accounts regarding these accounts, her income, or expenses.

11

The Plaintiff alleged the Debtor knowingly and fraudulently failed to disclose the March 18, 2004 Nancy Street Property transfer and transferred the property to Zika with the intent to hinder, delay, or defraud the Plaintiff. The Debtor disclosed the March 18, 2004 transfer in her original Statement of Financial Affairs at Question 10. The Plaintiff's allegation the Debtor failed to disclose the transfer is contrary to the plain and unambiguous disclosure made in the Debtor's Statement of Financial Affairs. The Plaintiff failed to establish the Debtor knowingly and fraudulently failed to disclose the transfer.

Zika originally gave the Debtor an interest in the Nancy Street Property to benefit their daughter in the event of his death. He did not have a will in 2001. Both Zika and the Debtor testified Zika asked the Debtor to deed back the property to him in 2004 for estate planning purposes. He was preparing a Last Will and Testament and a Revocable Living Trust in 2004 to provide for his loved ones.[18] Zika did not know the Debtor was contemplating bankruptcy. The Debtor made the March 18, 2004 transfer to assist Zika with his estate planning and not for any fraudulent purpose. Their testimony was credible. The Plaintiff failed to establish the Debtor transferred the Nancy Street Property with the intent to hinder, delay, or defraud the Plaintiff.

The Plaintiff alleged the Debtor failed to disclose the satisfaction of a joint Navy Credit Union mortgage with Richard Zika on April 29, 2004 relating to real property located at 4907 Sycamore Street and satisfaction of a joint Navy Credit Union mortgage with Richard Zika on May 6, 2004 relating to the Nancy Street Property "which payments operated as transfers of liquid assets." The Plaintiff failed to establish any of

---

[18] Plaintiff's Exh. Nos. 29, 30.

the Debtor's assets were used to satisfy the mortgages and that she transferred such assets with the intent to hinder, delay, or defraud the Plaintiff.

The Plaintiff has failed to establish a basis for the denial of the Debtor's discharge.

## CONCLUSIONS OF LAW

The Plaintiff seeks denial of the Debtor's discharge pursuant to 11 U.S.C. Sections 727(a)(2) and (a)(4) in Count I of its Complaint.[19] The party objecting to a debtor's discharge or the dischargeability of a debt carries the burden of proof and the standard of proof is preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291 (1991); Fed. R. Bankr. P. 4005. Objections to discharge are to be strictly construed against the creditor and liberally in favor of the debtor. Schweig v. Hunger (In re Hunter), 780 F.2d 1577, 1579 (11th Cir. 1986).

### *11 U.S.C. § 727(a)(2)(A)*

Section 727(a) of the Bankruptcy Code sets forth a debtor shall be granted a discharge unless certain abuses have been committed by the debtor. A discharge will be denied where a debtor has, within one year of the petition date, "with the intent to hinder, delay, or defraud a creditor or an officer of the estate . . . transferred, removed, destroyed, mutilated, or concealed property of the debtor." 11 U.S.C. § 727(a)(2)(A).

A creditor asserting the intent to defraud pursuant to Section 727(a)(2)(A) bears the significant burden of establishing actual fraudulent intent. Equitable Bank v. Miller (In re Miller), 39 F.3d 301, 306 (11th Cir. 1994) (*citing* Wines v. Wines (In re Wines), 997 F.2d 852, 856 (11th Cir. 1993)). Constructive fraud is not adequate. Id.

---

[19] The Plaintiff failed to plead the specific subsections of Sections 727(a)(2) and (a)(4) upon which its Complaint is based. Presumably, the Complaint is based upon Sections 727(a)(2)(A) and (a)(4)(A).

13

"Concealment under this section occurs when a debtor's interest in the property is not obvious, but the debtor continues to reap the benefits the property has to offer." In re Greene, 340 B.R. 93, 98 (Bankr. M.D. Fla. 2006) (*citation omitted*).

The Plaintiff has not established its Section 727(a)(2)(A) allegations. The Rogel and Nancy Street Property transfers were not made with the intent to hinder, delay, or defraud the Plaintiff. The Rogel transfers were made to put the Debtor's grandmother back to her original position. The Nancy Street Property transfer was made at Zika's request for estate planning purposes. The Debtor did not conceal any assets. She did not undervalue her assets. Information relating to her USAA Rollover Account was unintentionally and inadvertently omitted from her original schedules and statements. The January 9, 2004 transfers quitclaiming the Rogel properties back to Rogel were disclosed in the Debtor's statements, but without sufficient detail. The March 18, 2004 Nancy Street Property transfer was fully disclosed in the Debtor's statements.

The Debtor made complete disclosures regarding her financial accounts and the property transfers in her amended schedules immediately after engaging new counsel. She fully cooperated with the Trustee and provided information to him early in her Chapter 7 proceedings.

The Debtor did not transfer, remove, destroy, mutilate, or conceal property within one year of the Petition Date with the intent to hinder, delay, or defraud any creditor or an officer of the estate. The Plaintiff has failed to establish the elements of 11 U.S.C. Section 727(a)(2)(A).

## *11 U.S.C. § 727(a)(4)(A)*

Section 727(a)(4)(A) of the Bankruptcy Code provides the Court shall grant the debtor a discharge, unless "the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account." 11 U.S.C. §727(a)(4)(A). In a §727(a)(4)(A) discharge objection proceeding, the objecting party must show that the debtor made the false oath knowingly and fraudulently. In re Chalik, 748 F.2d 616, 619 (11th Cir. 1984).

The Eleventh Circuit has held a discharge should be denied where the omission from the Schedules or Statement of Financial Affairs is both fraudulent and material. Swicegood v. Ginn, 924 F.2d 230, 232 (11th Cir. 1991). The subject matter of a false oath is considered "material" and thus sufficient to bar discharge if it "bears a relationship to the bankrupt's business transactions or estate or concerns the discovery of assets, business dealings or the existence and disposition of his property." In re Chalik, 748 F.2d at 618.

It is irrelevant that a debtor does not intend to injure his creditors when he makes a false statement. Id. "A debtor has a paramount duty to consider all questions posed on a statement or schedule carefully and see that the questions are answered completely in all respects." In re Sofro, 110 B.R. 989, 991 (Bankr. S.D. Fla. 1990). It is not the job of the debtor to determine which of the questions are relevant or material. Haught v. U.S., 242 B.R. 522, 526-27 (M.D. Fla. 1999). "Discharge may not be denied where the untruth was the result of mistake or inadvertence." Keefe v. Rudolph (In re Rudolph), 233 Fed. Appx. 885, 889 (11th Cir. 2007) (*citation omitted*).

The Plaintiff has not established its Section 727(a)(4)(A) allegations. The Debtor did not fraudulently omit information from her schedules and statements. She unintentionally omitted information relating to her USAA Rollover Account through inadvertence. Her disclosure regarding the April 21, 2004 Rogel transfers was imprecise, but she disclosed the transfers. She remedied the omission and imprecision in her amended schedules immediately after engaging new counsel. She fully cooperated with the Trustee and provided to him detailed information early on in her Chapter 7 proceedings. The Debtor did not knowingly and fraudulently make a false oath or account. The Plaintiff has failed to establish the elements of 11 U.S.C. Section 727(a)(4)(A).

*Conclusion*

Zika has been a dominant, ever-present force in the Debtor's life orchestrating real estate transactions and the Debtor following his directions. The Debtor may have received a financial benefit from the transactions in earlier years, but no financial benefits existed for her when she filed for bankruptcy. None of the transactions identified by the Plaintiff in its Complaint benefitted the Debtor financially or deprived her estate of assets.

Debtors are required to be utterly transparent in their financial disclosures. The Debtor's original disclosures were somewhat less than fully transparent, particularly regarding her financial accounts and the April 21, 2004 Rogel transfers. The Plaintiff was entitled to challenge the accuracy of the Debtor's disclosures and it did so through its Complaint. The Plaintiff could not prevail on its 11 U.S.C. Section 523 allegations so it pressed forward with its Section 727 counts.

16

The Court encounters debtors who have intentionally concealed assets and egregiously misrepresented their financial matters. These debtors are undeserving of a discharge and denial of discharge is warranted pursuant to Section 727. The Debtor is not one of these.

The Plaintiff's Complaint consists of disparate facts stitched together to portray the Debtor as having engaged in wholesale fraud. The Debtor's involvement in some of the transactions may have been misguided and her disclosures imprecise, but she did not act with fraudulent intent. She provided information to the Trustee early in the case and has fully cooperated with him. She filed detailed amended schedules and statements immediately after engaging new counsel. Her missteps in this case were inadvertent and unintentional. She committed no act warranting the denial of her discharge.

The Plaintiff has not established the elements of 11 U.S.C. Sections 727(a)(2)(A) or 727(a)(4)(A). The Debtor is entitled to a discharge.

A separate judgment in favor of the Debtor and against the Plaintiff consistent with these Findings of Fact and Conclusions of Law shall be entered contemporaneously.

Dated this 30th day of January, 2008.

ARTHUR B. BRISKMAN
United States Bankruptcy Judge